IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Linda M. Dennis, ) | |
| ) | Civil Action No. 6:05-1107-MBS-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Jo Anne B. Barnhart, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security Administration that the plaintiff was not entitled to disability insurance benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

On December 17, 2001, and December 12, 2001, respectively, the plaintiff filed an application for DIB alleging disability beginning August 20, 2001.[2] The applications were denied initially and on reconsideration. On September 25, 2002, the plaintiff requested a hearing, which was held on July 31, 2003. Following the hearing, at which the plaintiff, her attorney and a vocational expert appeared, the administrative law judge considered the case

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

[2] The plaintiff later amended her claims to reflect a closed period of disability from May 2001 to May 2003.

*de novo*, and on October 24, 2003, determined that the plaintiff was not entitled to benefits. This determination became the final decision of the Commissioner when it was adopted by the Appeals Council on February 11, 2005.

In making the determination that the plaintiff was not entitled to benefits, the ALJ made the following findings:

> (1)     The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.
>
> (2)     The evidence of record indicates the claimant did not engage in substantial gainful activity for a period of approximately 20 months after the alleged date of disability onset.
>
> (3)     The claimant's residuals of a left wrist fracture constitute a "severe" impairment within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (20 CFR §§ 404.1521 and 416.921).
>
> (4)     The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
>
> (5)     The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairment (20 CFR §§ 404.1527 and 416.927).
>
> (6)     The claimant has retained the residual functional capacity to perform work with restrictions that require no lifting or carrying over 10 pounds.
>
> (7)     The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965).
>
> (8)     The claimant is a "younger" individual (20 CFR §§ 404.1563 and 416.963).
>
> (9)     The claimant has more than a high school education (20 CFR §§ 404.1564 and 416.964).

>(10)   The claimant has transferable skills from past relevant work as described in the body of the decision (20 CFR §§ 404.1568 and 416.968).
>
>(11)   The claimant has the residual functional capacity to perform sedentary work (20 CFR §§ 404.1567 and 416.967).
>
>(12)   Using Medical-Vocational Rule 201.29 as a framework for decision-making, there are a significant number of jobs in the national economy that the claimant can perform. Examples include the sedentary, semi-skilled jobs of production clerk, and production coordinator.
>
>(13)   The claimant was not under a disability, as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(1)).

The only issues before the court are whether the findings of fact are supported by substantial evidence and whether proper legal standards were applied.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. §423(a).  "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments

found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a). *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a

4

> preponderance. If there is evidence to justify a refusal to direct
> a verdict were the case before a jury, then there is "substantial
> evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **EVIDENCE PRESENTED**

The plaintiff alleges disability since August 2001 due to a left arm fracture (Tr. 61-64, 73, 182-84). She was 33 years of age as of the date of the Commissioner's final decision (Tr. 62). She has more than a twelfth-grade education and past work experience as a line leader, an inspector and a production supervisor in a poultry plant; a nursing assistant; a U.S. Navy corpsman; a school bus driver; and a fast food worker (Tr. 74, 79, 86, 107). During the pendency of her application the plaintiff agreed to amend her claim to a closed period of disability between May 2001 and May 2003, when she returned to full-time employment (Tr. 49).

Evidence relevant to the plaintiff's claim revealed that she underwent open reduction and internal fixation of a left arm fracture on May 22, 2001, following a work-related injury (Tr. 116-21). The plaintiff subsequently underwent physical therapy intermittently between June 20, 2001, and May 23, 2002 (Tr. 123-33, 171-73).

Records of Dr. David E. Tate, an orthopedist, between June 7, 2001, and April 9, 2002, revealed treatment for a left arm fracture, assessment of right shoulder pain and treatment with a medication injection for right long finger complaints (Tr. 160, 162-69). During this period, examination on July 5, 2001, revealed the ability to make a left fist. Left

arm x-rays revealed good fracture healing and maintenance of orthopedic hardware position. The plaintiff was cleared to perform desk work in a climate-controlled environment as of July 9, 2001 (Tr. 137, 167). Examination on August 14, 2001, revealed the ability to make and open/close a full left fist, a stable left radial/ulnar joint, grossly intact left arm sensation, and full left elbow extension. Left arm x-rays revealed maintenance of orthopedic hardware position (Tr. 166). Examination on September 21, 2001, revealed the absence of left arm pronation or supination, which it was noted the plaintiff had adapted to "nicely," and the ability to open/close a full left fist. Left arm x-rays revealed anatomic fracture healing. The plaintiff reported she was interested in returning to school, and she was released to perform desk work (Tr. 165). Examination on November 2, 2001, revealed the ability to open/close a full left fist. Left arm x-rays revealed anatomic maintenance of orthopedic hardware and fracture healing. The plaintiff reported she was comfortable and had returned to school. She was released to perform desk work until permanent work restrictions were established per a Functional Capacity Evaluation ("FCE") (Tr. 164). Examination on January 9, 2002, revealed the ability to make a full right fist, reasonably preserved right long finger rotation, and "perfect" right long finger function. Right long finger x-rays revealed only mild abnormalities. The plaintiff was advised that no right long finger treatment was necessary (Tr. 162-63). Examination on April 9, 2002, revealed right long finger tenderness and normal upper extremity muscle strength bilaterally. Right shoulder x-rays were normal (Tr. 160).

On August 3, 2001, a representative of the plaintiff's employer's insurance carrier noted that the plaintiff was performing restricted duty (Tr. 137). On September 24, 2001, the employer's insurance carrier's representative noted that the plaintiff had been released to perform desk work in a climate-controlled environment, but that she had resigned her position because she planned to return to college and because she found it difficult to work the shifts to which she was assigned at that time (Tr. 135).

6

The plaintiff underwent occupational therapy assessment on November 5, 2001, during which she indicated she desired to attend school. Examination at that time revealed reduced left wrist range of motion and normal right wrist range of motion (Tr. 154-55).

An FCE performed on November 16, 2001, showed no ability to perform left forearm pronation or supination; severely decreased ability to left perform wrist flexion or extension; and a moderate left wrist radial deviation (Tr. 148). With regard to the left shoulder and elbow, the FCE showed gross muscle strength of 3+/5 in shoulder internal rotation, shoulder external rotation, elbow flexion, and elbow extension. On the right, all areas were 5/5 (Tr. 149). Also included in the FCE are several notes made regarding pain behaviors, stating the plaintiff "used her left UE *as an assist*," "had difficulty with 54-inch height placement of 5 lbs, difficulty with floor height lift at 10 lbs," and "Left hand/forearm weakness" (Tr. 152).

In a statement dated December 10, 2001, the plaintiff reported she was not taking any medications for her injuries or conditions (Tr. 78). In a statement dated December 27, 2001, the plaintiff reported she cared for her own personal needs with occasional assistance, performed light household cleaning and other chores, cooked with difficulty in heavy lifting, prepared her children for school, drove an automobile with effort, shopped with assistance in lifting, visited others, and dined out occasionally (Tr. 94-97).

In a statement dated February 14, 2002, Dr. Tate reported that the plaintiff had a 32% impairment of the whole person due to an impairment of the left upper extremity (Tr. 161).

In an undated statement, the plaintiff reported she took Motrin and Tylenol (Tr. 106).

At her hearing on July 31, 2003, the plaintiff testified that she had sustained a work-related left arm fracture in May 2001, causing residual pain (Tr. 234, 236-38) and that

7

she experienced a right long finger "trigger finger" (Tr. 236), bilateral shoulder "problems" (Tr. 235-39) and right arm weakness (Tr. 235-36, 238-40). She also testified that Dr. Tate had recommended surgery on the finger (Tr. 236).

The plaintiff stated she had returned to college full time in October 2001, at which time she had only seven credit hours, and was currently attending college and then had 76 credit hours (Tr. 227-28, 242). She also stated she took online and campus courses (Tr. 228). She further stated she cared for her own personal needs with occasional assistance (Tr. 229, 241), performed light household cleaning and other chores (Tr. 240), prepared simple meals without assistance and heavier items with assistance (Tr. 229, 241), possessed a driver's license and drove 20 miles each way to college classes two to four days weekly (Tr. 227-28), and shopped with assistance in heavy lifting (Tr. 240-41). She additionally stated that her roommate performed all care for her four children (Tr. 242). She also stated she was at that time, and had been since May 2003, working full time (Tr. 249-50).

Feryal Jubran, a vocational expert, testified that, considering an individual of the plaintiff's age, education, past relevant work experience and residual functional capacity (RFC) to lift 10 pounds and sit, stand and walk without restriction, jobs existed in the regional and national economies which such an individual could perform (Tr. 245-46). She cited production clerk and production coordinator as examples and provided the incidence of these jobs in the regional and national economies (Tr. 246).

After considering all of the evidence, the ALJ found in his decision dated October 24, 2003, that the plaintiff had "severe" residual effects of a left wrist fracture, as well as shoulder and right long finger impairments which were not severe, but that she did not have an impairment or a combination of impairments listed in or medically equal to one listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (Tr. 24, 27). He also found that the plaintiff's subjective complaints were not totally credible (Tr. 27). He further found that the plaintiff retained the RFC to lift 10 pounds and sit, stand, and walk without restriction (Tr. 27). In light of the

evidence of record, the ALJ determined that, although the plaintiff could not perform her past relevant work, in light of VE testimony and other evidence of record, there was a significant number of jobs in the national economy the plaintiff could perform, given her particular limitations (Tr. 27). Therefore, the plaintiff was found not disabled (Tr. 27-28).

The plaintiff also suffered a fractured collarbone and rotator cuff tear injury, which was not diagnosed at the time of the hearing but which was subsequently diagnosed and treated with surgery in December 2003 (Tr. 190-96; 207-11). The surgical notes were sent to the Appeals Council (pl. brief 4).

## ANALYSIS

The plaintiff alleges a closed period of disability between May 2001 and May 2003, when she returned to full time employment (Tr. 49), due to a left arm fracture (Tr. 73). The ALJ found that the residuals of the plaintiff's left wrist fracture constitute a "severe" impairment, but the alleged shoulder disability and disability of the middle finger of the right hand were non-severe impairments (Tr. 24, 27). The ALJ found that the plaintiff could perform sedentary work,[3] and, based upon the testimony of the vocational expert, he determined that there are a significant number of jobs in the national economy that she could perform. He cited the jobs of production clerk and production coordinator (Tr. 26). The plaintiff alleges that the ALJ erred by (1) failing to consider all of the medical evidence; (2) failing to include all of her functional limitations in the hypothetical question posed to the vocational expert; and (3) relying on erroneous vocational expert testimony.

The plaintiff first argues that the ALJ and Appeals Counsel erred by failing to consider all of the medical evidence. As noted above, the hearing before the ALJ took place

---

[3]Sedentary work involves sitting six hours and walking and standing two hours in an eight-hour workday, and lifting no more than 10 pounds at a time. See 20 C.F.R. §§404.1567(a), 416.967(a) (2005); Social Security Ruling (S.S.R.) 83-10.

on July 31, 2003. At the hearing, the plaintiff testified that she had appointment with Dr. Tate on August 19, 2003, and Dr. Tate had already told her she would require additional surgery due to her left shoulder pain (Tr. 238-39). Dr. Michael Drakeford, a partner in the same practice as Dr. Tate, saw the plaintiff and ordered an MRI of her left shoulder, which was performed on December 4, 2003. On December 4, 2003, he performed surgery on the plaintiff's left shoulder, including removal of part of the plaintiff's fractured collarbone. The post-operative diagnoses were "anterior labrum tear with Bankart lesion for left glenohumeral joint, supraspinatus impingement syndrome, and left acromioclavicular joint arthritis" (Tr. 190-96). On October 2, 2003, Dr. Drakeford stated in his office notes that the plaintiff's symptoms had been present for over a year, since she injured her arm when she fell at work in May 2001 (Tr. 195).

The plaintiff argues that while the ALJ did not have the surgery notes from December 2003 to consider, the Appeals Council did have them and failed to adequately consider them. The plaintiff contends that the Appeals Council should have remanded the case back to the ALJ for further consideration of the plaintiff's left shoulder impairment and its effect on her ability to perform substantial gainful activity (pl. brief 8). The defendant argues that the evidence dated after the end of the plaintiff's alleged closed period of disability is irrelevant (def. brief 10). This court disagrees. As argued by the plaintiff, the medical records from the surgery in December 2003 pertain to the injuries she suffered in the work accident in May 200. Therefore, the records are relevant to the closed period of disability, even though they are from after that period.

The plaintiff further argues that the ALJ failed to consider the FCE performed by John Zelenka on November 16, 2001. Mr. Zelenka noted that the plaintiff used her left hand and arm as an assist, but that the arm demonstrated consistent and significant weakness with corresponding functional limitations (Tr. 143). The plaintiff had no ability to perform left forearm pronation or supination; severely decreased ability to perform wrist

10

flexion or extension; and a moderate left wrist radial deviation (Tr. 148). In regard to her left shoulder and elbow, the FCE showed gross muscle strength of 3+/5 in shoulder internal rotation, shoulder external rotation, elbow flexion, and elbow extension (Tr. 149). The FCE showed that the plaintiff demonstrated objective signs of left and forearm weakness when she bilaterally lifted five pounds above a 48-inch height (Tr. 143).

Mr. Zelenka clarified his findings in the FCE (Tr. 142-52) by letter dated September 11, 2003 (Tr. 59-60). Both the FCE and the clarifying letter were submitted to the ALJ prior to the ALJ making his determination. In the letter, Mr. Zelenka stated that he agreed with the plaintiff's personal representative's interpretation of the FCE (Tr. 59, 197). He opined that the plaintiff could handle objects for 100 minutes (1.65 hours) per work day (whether the work day was five or eight hours). Further, as the plaintiff could handle objects with only one arm, that number would be divided in half, or 50 minutes per work day (Tr. 56). The same ratings were given for the plaintiff's abilities for fingering and feeling (Tr. 151).

The defendant argues that the FCE should not be relied upon because it was conducted by a physical therapist, who is not an acceptable medical source (def. brief 10). As noted by the plaintiff, Mr. Zelenka is actually an occupational therapist. While the regulations do not include therapists as "acceptable medical sources," the regulations do provide that evidence from "other sources," including medical sources such as therapists, can be used to show the severity of a claimant's impairments and how the impairment affects the claimant's ability to work. 20 C.F.R. §§404.1513(a), (d), 416.913(a),(d).

The defendant also argues that the FCE should not be relied upon because there is no evidence that Dr. Tate adopted the results of the FCE or the therapist's interpretation of them (def. brief 10). This court disagrees. The FCE by Mr. Zelenka was ordered by Dr. Tate in order to determine the plaintiff's work capabilities (Tr. 164-65). On February 14, 2002, Dr. Tate referred to the FCE in his statement that the plaintiff had a 54% impairment of the left upper limb and a 32% impairment of the whole person (Tr. 161). Based

11

upon the foregoing, it appears from the evidence that Dr. Tate did adopt the findings of the FCE. Based upon the foregoing, the ALJ erred in his conclusions with regard to the FCE.

The plaintiff next argues that the hypothetical posed by the ALJ to the vocational expert did not include all of the plaintiff's limitations. The Fourth Circuit Court of Appeals has held that "[i]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of the claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). The questions, however, need only reflect those impairments that are supported by the record. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3rd Cir. 1987).

The ALJ asked the expert to assume a claimant who could perform work requiring no lifting or carrying over 10 pounds (Tr. 245). The expert identified the jobs of purchase clerk, production clerk, and production coordinator (Tr. 246). As set forth above, the ALJ erred in failing to consider the FCE performed by Zelenka. Further, in the hypothetical presented to the vocational expert, the ALJ did not give any limitation on handling, fingering, feeling, grasping, reaching, or pushing/pulling, all of which were included in the FCE and incorporated into Dr. Tate's letter stating that the plaintiff had a 54% impairment of the left upper limb (Tr. 151, 161). Furthermore, the hypothetical did not include the lifting restrictions set forth in the FCE (Tr. 151). Substantial evidence does not support the ALJ's findings with regard to the plaintiff's limitations as included in the hypothetical question. Based upon the foregoing, the ALJ erred in failing to include all of the plaintiff's limitations.

Lastly, the plaintiff argues that the ALJ relied on erroneous vocational expert testimony. As discussed above, substantial evidence does not support the ALJ's finding that the plaintiff had the residual functional capacity to perform work with restrictions that require no lifting or carrying over 10 pounds. Further, as discussed above, the plaintiff also had

limitations on handling, fingering, feeling, grasping, reaching, or pushing/pulling that were not included in the hypothetical question to the vocational expert. While the plaintiff points out numerous alleged errors in the vocational expert's testimony, it is not necessary to address these arguments as it is clear that the ALJ did not include all of the plaintiff's limitations in his hypothetical question to the vocational expert. Accordingly, upon remand, a supplemental hearing should be conducted. The ALJ should obtain vocational expert testimony in response to a hypothetical question including all of the plaintiff's limitations.

Based upon the foregoing, the case should be remanded to the ALJ for further consideration of the plaintiff's left shoulder impairment and its effect on her ability to perform substantial gainful activity.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.


                                                       s/William M. Catoe
                                                       United States Magistrate Judge

April 28, 2006

Greenville, South Carolina